**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 12, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2025AP136-CR**

Cir. Ct. No.  **2023CF1914**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

TATE H. BATSON,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: JULIE GENOVESE, Judge. *Affirmed*.

¶1     NASHOLD, J.[1]  Tate Batson appeals a restitution order that was entered following his conviction for criminal damage to property and resisting or

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

obstructing an officer. Batson argues that the circuit court erroneously exercised its discretion by ordering Batson to pay restitution amounts that he alleges were not supported by the record and by ordering Batson to pay the full restitution amount, which he contends he is unable to pay. I affirm.

## BACKGROUND

¶2 Batson was charged with burglary as party to a crime, obstructing an officer, and resisting an officer. According to the criminal complaint, police responded to a call of a burglary in progress. The caller said that, while across the street, he heard glass breaking inside a building and then saw two people flee the building. Police encountered Batson near the building, and the caller later identified Batson as one of two individuals who he had seen flee. Following Batson's arrest, when police attempted to photograph the cuts they saw on Batson's hands, Batson resisted their efforts. Police discovered that the back door of the building had been forcibly entered and the windows broken.

¶3 Pursuant to a plea agreement, Batson pleaded guilty to one amended count of criminal damage to property and one count of resisting or obstructing an officer. The circuit court withheld sentence and placed Batson on probation for two years.

¶4 The owner of the building, which consisted of two rental units, sought restitution in the amount of $12,464.01. At a restitution hearing, the building owner ("the owner") testified regarding a document that he had prepared and captioned as an "invoice," which he described as "[t]he breakdown on what was damage[d]." The invoice was received into evidence and included the following four categories of expenses that, together, comprised the owner's request for $12,464.01 in restitution:

2

- Repaired and replaced window glass and storm windows: $3,110.

- Removed vandalized appliances and three base cabinets, and replaced refrigerator and dishwasher: $1,954.01.

- Installed three base cabinets, refrigerator, stove and dishwasher; removed and reinstalled countertops; patched two holes in walls and painted; and repaired kicked in back entry door: $3,800.

- Two months of rent: $3,600.

¶5      The owner testified at the restitution hearing that Batson and his accomplice ripped the door off the refrigerator and bent the refrigerator door, broke the dishwasher, ripped the doors off three base cabinets, made two holes in the wall, and broke all of the windows. He testified that prior to the burglary, there was no damage to the building, aside from water damage that was caused by an earlier incident in which someone broke into the same building and destroyed a toilet. Batson testified that he broke the door on the first floor and, on the second floor, ripped out cabinet doors under the sink and put his foot through a window. He denied involvement in the other damage to the building, but testified that the person who was with him may have done it.

¶6      The circuit court awarded the owner the full amount of restitution sought. In rendering its decision, the court reasoned, "I have [the owner's] testimony that the items in [the invoice and related documents] were the repairs that were necessary for the damage" caused by Batson and his accomplice. The court further stated, "[The owner] is telling me what it cost to [make the] repair[s] …. I believe [the owner] on that. So I am going to award the amounts

requested." The court also rejected Batson's argument that he was unable to pay, determining that he would be able to pay the restitution over time.

¶7    Batson appeals.[2]

## DISCUSSION

¶8    Restitution is governed by WIS. STAT. § 973.20, and its primary purpose "is to compensate the victim." *State v. Wiskerchen*, 2019 WI 1, ¶22, 385 Wis. 2d 120, 921 N.W.2d 730. Pursuant to § 973.20(1r), a circuit court must "order the defendant to make full or partial restitution … to any victim of a crime considered at sentencing … unless the court finds substantial reason not to do so and states the reason on the record." "The statute 'reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution.'" *Wiskerchen*, 385 Wis. 2d 120, ¶22 (quoted source omitted).

¶9    Batson argues that the owner did not prove, by a preponderance of the evidence, the amount of loss that he sustained. Batson also argues that the circuit court erroneously exercised its discretion by determining that Batson had the ability to pay restitution in the amount ordered. I address, and reject, each argument in turn.

---

[2] The State's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). As our supreme court explained when it amended the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. Ct. Order 20-07 cmt. at x1.

## *I. The amount of restitution.*

¶10 At a restitution hearing, the burden is on the victim to demonstrate the amount of loss sustained as a result of the crime by a preponderance of the evidence. WIS. STAT. § 973.20(14)(a); *see also* **Wiskerchen**, 385 Wis. 2d 120, ¶25. A circuit court's calculation of restitution is a discretionary determination. **Wiskerchen**, 385 Wis. 2d 120, ¶18. We reverse a circuit court's discretionary decision "'only if the [circuit] court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts.'" **Id.** (quoted source omitted). A circuit court's determination that a victim has met his or her burden of proving the amount of loss sustained is a finding of fact, which must be upheld unless clearly erroneous. **Id.**, ¶29. "[A] circuit court's finding of fact is not clearly erroneous unless it is against the great weight and clear preponderance of the evidence, even if the evidence may have presented competing factual inferences," and "will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding." **Id.**, ¶30. This court "will search the record not for evidence opposing the circuit court's decision, but for evidence supporting it." **Id.**

¶11 Here, Batson does not challenge the restitution amounts of $3,110 for the broken windows or $3,600 for two months of rent. Rather, Batson challenges the $3,800 amount and a portion of the $1,954.01 amount. His arguments as to each amount are unpersuasive.

¶12 As noted, the owner sought $3,800 in restitution for installing three base cabinets, the refrigerator, the stove, and the dishwasher; varnishing cabinets; removing and reinstalling countertops; patching and painting two holes in the wall; and repairing the entry door. Regarding this amount, Batson argues that the

owner did not provide any testimony about the specific amount of restitution that he was requesting; that when asked if he had receipts, the owner responded that he had only been told to bring an invoice; that the only "invoice" the owner produced was a request that he created; and "[t]hat there was no proof, other than the estimate from the window company and [the owner's] testimony regarding the cost of the cabinets and refrigerator from Menards, of what he actually paid for anything or how he arrived at the amount" of $3,800.

¶13     However, although the owner did not provide receipts, as stated, the owner did list on the invoice which repairs were included in the request for $3,800, and at the restitution hearing the owner testified to having substantially completed these repairs.  He further testified that the invoice "is just on the damage that [Batson] did."  As stated, in rendering its decision, the circuit court reasoned, "I have [the owner's] testimony that the items in [the invoice and related documents] were the repairs that were necessary for the damage" caused during the burglary.  The court further found that the owner "is telling me what it cost to repair ….  I believe [the owner] on that," and the court awarded the amounts requested.  The owner's testimony, which the court deemed credible, along with the owner's supporting documentation, was sufficient to prove the amount of loss sustained.  *See also id.*, ¶29 ("[A]lthough the circuit court did not itemize which stolen items were included in the award of $8,487.41, the finding of fact that [the victim] proved her loss is not clearly erroneous.").

¶14     As to the restitution amount of $1,954.01, Batson relies on what he argues is an inconsistency between the invoice that the owner provided and the owner's testimony at the hearing.  Specifically, according to the invoice, the owner sought $1,954.01 in restitution for removing the vandalized appliances, removing three base cabinets, replacing the refrigerator, and, particularly relevant

for purposes of Batson's argument here, for replacing the dishwasher. However, at the restitution hearing, the owner testified that the refrigerator and cabinets cost $1,473, but that he was requesting $1,954.01 "[b]ecause then we have to haul them upstairs" and "[p]ut 'em … back in." Because the owner did not testify that the cost of replacing the dishwasher was included in the $1,954.01 amount that the owner was seeking, Batson argues that the owner failed to prove by a preponderance of the evidence the $481.01 difference between the total amount of $1,954.01 and the amount of $1,473 that the owner testified he paid for the refrigerator and cabinets. Batson also argues that, even if the cost of moving the cabinets and refrigerator was proper to include in the restitution order, $481.01 is an arbitrary amount and the owner was required to provide some basis for this amount.

¶15 I reject these arguments for much the same reason that I reject Batson's challenge to the amount of $3,800 discussed above: the circuit court relied on the owner's testimony as to the costs of the various repairs, and determined that testimony to be credible. To the extent that there may have been some discrepancy between the invoice and the owner's testimony as to the categorization of certain repairs, the bottom line is that the owner testified that he incurred all of the expenses for which he requested restitution as a result of the burglary, and the court credited his testimony. Batson has failed to show that the court clearly erred in finding that the owner met his burden of establishing the amount of restitution by a preponderance of the evidence. This is especially true given the *Wiskerchen* court's conclusion, noted above, that a circuit court's failure

to itemize which items are included in a restitution award does not render the finding of fact that the victim proved her loss clearly erroneous. *Id*.[3]

## II. Batson's ability to pay.

¶16 When ordering restitution, the circuit court is required to consider the defendant's "financial resources" and "present and future earning ability." WIS. STAT. § 973.20(13)(a)2., 3. The burden is on the defendant to demonstrate his or her financial resources and present and future earning ability. § 973.20(14)(b). As noted, "[r]estitution orders involve discretionary decisions of the circuit court," and may be reversed on appeal "'only if the [circuit] court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts.'" *Wiskerchen*, 385 Wis. 2d 120, ¶18 (quoted source omitted).

¶17 Batson argues that the circuit court erroneously exercised its discretion when it concluded that Batson had the ability to pay $12,464.01 in restitution because, according to Batson, the court did not ground its decision on a logical interpretation of the facts. Batson relies on an exchange in which the court, while addressing Batson, stated, "You've got this internship … doing construction [for] $30 an hour," which Batson argues was clearly erroneous. Specifically, he contends that the court "misinterpreted Batson's testimony that he was hoping to

---

[3] In his reply brief, Batson seeks to distinguish *State v. Wiskerchen*, 2019 WI 1, 385 Wis. 2d 120, 921 N.W.2d 730, based on the facts of that case. However, Batson does not adequately explain why these factual distinctions make *Wiskerchen*'s holding inapplicable or less relevant here.

get an internship working construction as Batson actually having an internship making $30 per hour."[4]  I reject this argument.

¶18    The circuit court's statement was based on the following testimony. Batson testified that he was "in the process of an internship with Big Step Resources, which is like a construction company."  Batson explained that he needed the Department of Vocational Rehabilitation to refund him $25 for an aptitude test that the Department wanted him to take, "and then it's an internship. So the internship is paid."  The exchange continued:

> THE COURT: And have you ever worked?
>
> [BATSON]: I have, yes.
>
> THE COURT: What have you done?
>
> [BATSON]: I've done food service.  Food service isn't quite up my alley, so I'm sticking with, you know, construction, just to do something that I love.
>
> THE COURT: Okay.  Do you have any idea how much they're going to pay you?
>
> [BATSON]: Yeah.  The – the construction pamphlet did say something about $30 an hour, which is a lot of money, as far as I am concerned, so.  Yeah.
>
> THE COURT: Okay.
>
> [BATSON'S ATTORNEY]: Have you started that job yet?
>
> [BATSON]: No. I just need to -- you know DVR wants me to be in contact with them, so.

---

[4] Batson additionally notes that at the time of the restitution hearing, it was undisputed that he was indigent as evidenced by his qualification for public defender representation, and that he was receiving Social Security Disability Insurance after having experienced a traumatic brain injury as a teenager.  However, his actual challenge focuses solely on what he claims is an erroneous finding regarding his internship.

....

THE COURT: But you worked in the past.

[BATSON]: Mm hmm.

THE COURT: You've got this internship --

[BATSON]: Mm hmm.

THE COURT: -- doing construction, $30 an hour.

[BATSON]: Mm hmm.

The court then ordered that Batson pay the full amount of restitution, noting that the amount ordered was "less than most people would pay for a car payment" and that Batson "should have the ability to pay that amount over time."[5]

¶19     Although Batson argues on appeal that the circuit court's statement to Batson that "you've got this internship … doing construction [for] $30 an hour" was clearly erroneous, as shown above, in the circuit court Batson endorsed the court's characterization by affirmatively responding, "Mm hmm."  This alone is a basis to reject Batson's argument that the court's statement was clear error.

¶20     In addition, however, I reject Batson's interpretation of the circuit court's statement as necessarily meaning that Batson already had the internship. Rather, the court's statement is reasonably understood as saying that Batson would soon have the internship; indeed, the court's statement came shortly after Batson clarified, in response to a question from his attorney, that he had not yet started the internship.  And even though Batson had not yet started the internship, the court could nevertheless consider the internship in deciding restitution.  *See* WIS. STAT.

---

[5] The restitution order indicates that Batson was required to pay the $12,464.01 amount over the course of his two-year probationary period.

§ 973.20(13)(a)3. (stating that the court may consider "[t]he present *and future* earning ability of the defendant" (emphasis added)).

¶21 Accordingly, I reject Batson's contention that the circuit court's statement was clear error. And because Batson's challenge to the court's order requiring him to pay the full restitution amount is predicated on this rejected premise, his challenge fails.

## CONCLUSION

¶22 For the reasons stated, I affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.